## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**CHAD BIGGIN,**

                    **Plaintiff,**

**-vs-**                                            **Case No.  6:06-cv-104-Orl-19KRS**

**RLI INSURANCE COMPANY,**

                    **Defendant.**

_____

# ORDER

This case comes before the Court on the following:

1.     Finally Dispositive Motion to Dismiss or, in the Alternative, for Final Summary Judgment of Defendant RLI Insurance Company (Doc. No. 3, filed January 24, 2006);

2.     Memorandum of Law in Support of Defendant's Finally Dispositive Motion to Dismiss or, in the Alternative, for Final Summary Judgment (Doc. No. 4, filed January 24, 2006);

3.     Notice of Filing Affidavits by Defendant (Doc. No. 5, filed January 24, 2006);

4.     Affidavits of Andrea J. Dean and Roberta Lawlor (Doc. No. 6, filed January 24, 2006);

5.     Cross Motion for Summary Judgment of Plaintiff Chad Biggin and Response in Opposition to the Defendant's Motion to Motion to Dismiss or, in the Alternative, for Final Summary Judgment (Doc. No. 28, filed February 21, 2006, and filed again the next day as Doc. No. 31);

6.      Plaintiff's Notice of Filing Affidavits of Chad Biggin and James Nicholas (Doc. No. 29, filed February 21, 2006);

7.      Memorandum in Support of Plaintiff's Cross Motion for Summary Judgment and Response in Opposition to the Defendant's Motion to Motion to Dismiss or, in the Alternative, for Final Summary Judgment (Doc. No. 32, filed February 22, 2006);

8.      Defendant's Response to Plaintiff's Cross Motion for Summary Judgment (Doc. No. 44, filed March 27, 2006);

9.      Orders of the Court taking under advisement Defendant's Motion for Summary Judgment (Doc. No. 9, filed January 26, 2006) and taking under advisement Plaintiff's Cross Motion for Summary Judgment (Doc. No. 34, filed February 24, 2006);

10.     Order of the Court granting leave to both parties to file a properly authenticated and otherwise admissible copy of the "Release of All Claims" (Doc. No. 45, filed April 11, 2006);

11.     Stipulation Regarding Release of All Claims of Plaintiff and Defendant (Doc. No. 46, filed April 14, 2006); and

12.     Supplemental Affidavit of Roberta Lawlor (Doc. No. 47, filed April 14, 2006).

### Background of the Case

This action has as its genesis an incident that occurred on November 27, 2000. (Doc. No. 2, filed January 24, 2006, ¶¶ 6-7). On that date, Plaintiff Chad Biggin, a police officer for the City of Melbourne, Florida, was injured while effecting the arrest of Jonas Nance, the son of James and Elizabeth Nance. (*Id.*, ¶¶ 7, 9). Plaintiff subsequently filed suit in state court against Jonas, and after

Jonas' parents duly notified their personal umbrella liability insurance carrier, Defendant RLI Insurance Company, the parties reached an agreement settling the state court litigation for $1,000,000.[1] (*Id.*, ¶¶ 9-17). Although notified of the pending state court litigation, Defendant did not assume the defense on behalf of Jonas and instead issued a "Reservation of Rights" letter that (1) requested information concerning the defense provided by the Nances' primary insurance carrier, Lexington Insurance Company, (2) informed the Nances that its was investigating the possibility of a material misrepresentation that may have been made on the renewal application, and (3) questioned Jonas' status as an insured under the policy. (*Id.*, ¶ 12, Ex. F). Meanwhile, the state court entered an order approving the settlement agreement on August 30, 2004 and also entered a final judgment against Jonas in the amount of $1,000,000 plus post-judgment interest. (*Id.*, ¶¶ 15-16, Ex. H & I). Pursuant to the terms of the settlement agreement, Jonas assigned to Plaintiff all of his legal rights, remedies, claims, and causes of action incident to or otherwise arising from the events of November 27, 2000 that accrued against the Nances' insurance carriers. (*Id.*, ¶¶ 17-18).

More than a year after entry of the state court judgment, Plaintiff reached an agreement with the Nances' primary insurance carrier in which Plaintiff would receive an amount of $140,000 in exchange for a release of all claims arising from the events of November 27, 2000. (Doc. No. 47, ¶¶ 8-9, hereinafter the "Lawlor Aff."). After accepting and negotiating a check in the agreed amount, Plaintiff and his wife executed a "Release of All Claims" and returned the signed Release to the Nances' primary insurance carrier. (*Id.*, Ex. 2). The Release provides:

---

[1] Courts refer to settlement agreements reached in circumstances such as those found in this case as *Coblentz* agreements. *See Coblentz v. American Surety Co. of New York*, 416 F.2d 1059 (5th Cir. 1969).

KNOW ALL MEN BY THESE PRESENTS that in consideration of the total sum of One Hundred Forty Thousand Dollars . . . to be paid to [Plaintiff and his wife], ("Releasors") by, from an on behalf of LEXINGTON INSURANCE COMPANY, JONAS ANDREW NANCE, JAMES H. NANCE, AND ELIZABETH NANCE, his wife, (hereinafter "Releasees") receipt of which is hereby acknowledged, Releasors do hereby release and forever discharge Releasees, their representatives, successors, assigns, subsidiaries, officers, partners, directors, stockholders, attorneys, agents, servants, employees, insurers, and affiliates from any and all claims, demands, damages, costs, expenses, and causes of action based on tort, contract, or any other theory of recovery arising from any act or occurrence from the beginning of time to the present and particularly, but without limitation, on account of any damages of any kind, heretofore sustained or that may hereafter be sustained, whether known or unknown, whether foreseeable or unforeseeable, and on account of all personal injury, death, disability, property damage, or losses or any other damage of any kind and nature sustained as a consequence of the incident that occurred on or about November 27, 2000.

IT IS FURTHER UNDERSTOOD that:

1.      Releasors' allegations have been vigorously disputed by the parties, and it is their intention, by this Release, to settle all claims that have, or could have, been advanced by Releasors against Releasees.

2.      In furtherance of the intentions of the parties to this Release, Releasors release Releasees from all claims that Releasors may arguably have against Releasees as a result of the incident of November 27, 2000, on the terms set forth herein.

3.      Releasors agree to hold harmless, defend, and indemnify Releasees against all liens, statutory or otherwise, and all subrogation, contribution and indemnity claims, of all third parties, including but not limited to health insurers, health care providers, workmen's compensation insurers, automobile insurers, and Federal, State, and local governments and agencies. Releasors' duty to defend includes the duty to pay all costs incident to Releasees' defense, including but not limited to reasonable attorneys' fees incurred in all trial and appellate courts.

. . . .

(*Id.*, Ex. 3, hereinafter "Release").

After executing the Release, Plaintiff filed a three-count Complaint against Defendant in state court which was duly removed to this Court on January 24, 2006. (Doc. No. 2, ¶ 46; Doc. No.

36, p. 2). In Count I, the Complaint seeks a declaration of Plaintiff's rights under a contract of insurance issued by Defendant, claims damages for breach of contract in Count II, and in Count III alleges Defendant engaged in unfair claim settlement practices in violation of Section 626.9541(1)(i)(3)(c), Florida Statutes. (Doc. No. 2, ¶¶ 29-31, 34-37, 42-47).

Both parties seek summary judgment of the claims of the Complaint pursuant to Federal Rule of Civil Procedure 56. (Doc. Nos. 3, 28).  The Court has given notice to both parties that Defendant's Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment have been taken under advisement and that the adverse parties may file affidavit(s) within the purview of Federal Rule of Civil Procedure 56 in opposition to each motion. (Doc. Nos. 9, 34). Moreover, in an Order dated April 11, 2006, the Court gave leave to both parties to file a properly authenticated and otherwise admissible copy of the "Release of All Claims," which had been omitted from the official court record. (Doc. No. 45, pp. 2-3). The parties stipulated to the admission of the Release, and Defendant submitted the Supplemental Affidavit of Roberta Lawlor with a copy of all the exhibits referenced therein. (Doc. Nos. 46, 47, both filed April 14, 2006).

## Applicable Standards

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The moving party

-5-

bears the burden of proving that no genuine issue of material fact exists. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied the burden of proof, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then a court must not grant summary judgment. *Id.*

### Defendant's Motion for Summary Judgment

Defendant argues in its Motion for Summary Judgment that Plaintiff's claims are barred by the terms of the "Release of All Claims," contending that the plain reading of its terms releases and discharges all of Plaintiff's claims against Jonas, his parents, and their insurers. (Doc. No. 4, pp. 8-10). Defendant asserts, in the alternative, that certain parol evidence shows the intent of the parties to settle all of the claims arising from the November 27, 2000 incident and the resulting state court litigation. (*Id.*, pp. 9-10; Doc. No. 44, pp. 10-11).

Plaintiff responds by arguing that Florida law acts to prevent the Release, which does not refer to Defendant by name, from discharging Defendant's liability. (Doc. No. 32, pp. 6-9). In addition, Plaintiff offers his own affidavit as well as the affidavit of his attorney in the state court suit, James Nicholas, to raise an issue of fact concerning the manifestation of intent of the parties to discharge Defendant. (*Id.*, pp. 7-10, 13-14, 18-19). Moreover, to the extent that the terms of the

Release are ambiguous, Plaintiff suggests that such terms should be construed against the drafter, the primary insurance carrier of Jonas' parents. (*Id.*, pp. 18).

Initially, the Court will address the terms of the "Release of All Claims." It will then analyze each Count of the Complaint in light of its interpretation of the Release.

### *Interpretation of the "Release of All Claims"*

A litigation release of claims is a contract, and therefore it is construed according to the normal rules of contract interpretation. *See, e.g.*, *V & M Erectors, Inc. v. Middlesex Corp.*, 867 So. 2d 1252, 1253-54 (Fla. Dist. Ct. App. 2004). When interpreting a contract under Florida law, the Court is guided first by the language of the document itself. *See Downs v. Nike, Inc.*, 846 So. 2d 595, 601 (Fla. Dist. Ct. App. 2003). Where the terms of a contract are clear and unambiguous, the Court may not consider parol evidence but instead must determine the intent of the parties from the four corners of the document. *Id.* Additionally, "[w]ords in a contract are presumed to have been used with their ordinary and customary meaning." *Pottsburg Utils., Inc. v. Daugharty*, 309 So. 2d 199, 201 (Fla. Dist. Ct. App. 1975).

In the instant case, the "Release of All Claims" executed by Plaintiff discharges all claims against certain parties arising from injuries sustained by Plaintiff on a certain date. *See V & M Erectors, Inc.*, 867 So. 2d at 1254. The Release states that Plaintiff, along with his wife, intended "to settle all claims that have, or could have, been advanced by Releasors against Releasees as a result of the incident of November 27, 2000." (Release at preamble, ¶ 1). The meaning of "all claims" is self-evident. It encompasses all claims, including those already adjudicated and those not yet asserted by the Releasors. The term "Releasors" is specifically defined in the preamble of the document as Plaintiff and his wife, and the term "Releasees" is defined as Lexington Insurance

Company, Jonas Nance, and his parents. (Release at p. 1). This language is clear and unambiguous, and similar releases have been so interpreted by Florida courts. *See V & M Erectors, Inc.*, 867 So. 2d at 1254 (finding a release clear and unambiguous where the release addressed all claims "for, upon, or by reason of" an accident on a certain date).

The Release also contains general release language discharging the Releasees and "their representatives, successors, assigns, subsidiaries, officers, partners, directors, stockholders, attorneys, agents, servants, employees, ***insurers***, and affiliates." (Release, emphasis added). Plaintiff's argument that the term "insurers" must refer only the Lexington Insurance Company is not well taken. First, the term is in its plural form, a grammatical number used to refer to more than one referent, and Plaintiff's interpretation of the term would have the Court disregard the plain language of the Release. Second, by limiting the term "insurers," Plaintiff's interpretation makes that term redundant while at the same time ignoring its ordinary and customary meaning. Lastly, the form of the release is consistent, and the language itself is clear and unambiguous. Consequently, it is unnecessary and not proper for the Court to entertain evidence to the contrary. *See Sheen v. Lyon*, 485 So. 2d 422, 423-24 (Fla. 1986) ("When the language of a release, as with any contract, is clear and unambiguous a court cannot entertain evidence contrary to its plain meaning."); *Bd. of Trustees of Fla. Atl. Univ. v. Bowman*, 853 So. 2d 507, 510 (Fla. Dist. Ct. App. 2003) ("The inclusion of agents, employees, etc. is simply standard language in a general release that should be considered unambiguous and should not invalidate the proposal.").

Finally, although not raised by either party in their memoranda, the Court has considered whether the submissions of the parties raise the issue of mistake during the formation of the contract. In Florida, parol evidence is admissible to alter the terms of a written agreement when it is shown

that the true interests of the parties were not expressed in the contract because of a mutual mistake made at the time of its formation. *Ayr v. Chance*, 372 So. 2d 1000, 1001 (Fla. Dist. Ct. App. 1979) (Anstead, J.) (citing *Spear v. MacDonald*, 67 So.2d 630 (Fla. 1953)). A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the contract itself. *See Circle Mortgage Corp. v. Kline*, 645 So. 2d 75, 78 (Fla. Dist. Ct. App. 1994). A court may not, however, reform a contract if there was only a unilateral mistake by one of the parties. *See Ali R. Ghahramani, M.D., P.A. v. Pablo A. Guzman, M.D., P.A.*, 768 So. 2d 535, 538 (Fla. Dist. Ct. App. 2000).[2]

In the instant case, Defendant submits the affidavit of Roberta Lawlor, a representative of Lexington Insurance Company, who states that it was her understanding the Release would discharge "the purported named insureds, James Nance and Elizabeth Nance along with their son and all of their privies, successors and insurers." (Lawlor Aff., ¶ 9). Lawlor stated further that she "was never informed that Mr. Biggins' [sic] counsel did not want to release the RLI Insurance Company until I received [the] correspondence dated December 9, 2005" and that she "would not have allowed the $140,000 check to be forwarded to [Biggin] if I had been advised that [he] did not intend to release the RLI Insurance Company from all claims arising out of the incident." (*Id.* at ¶¶ 10-11).

---

[2] There is one exception to the general rule of unilateral mistake where (1) the mistake was induced by the party seeking its benefit, (2) there was no negligence or want of due care on the part of the party seeking to reform the contract, (3) denial of rescission or reformation would be inequitable, and (4) the position of the opposing party has not so changed that granting the relief would be unjust. *Ali R. Ghahramani, M.D., P.A. v. Pablo A. Guzman, M.D., P.A.*, 768 So. 2d 535, 538 n.1 (Fla. Dist. Ct. App. 2000). The record evidence does not satisfy these requirements, and this exception is neither applicable to the instant case nor argued by the parties.

In response, Plaintiff produces an affidavit in which he denies entering into the Release with the intent of discharging all claims against Defendant. Plaintiff also states that "at no time was it the intent of myself, my attorney, counsel for Lexington Insurance Company, nor Lexington itself to negotiate, procure, or obtain a general release in favor of . . . RLI Insurance Company." (Doc. No. 29, Ex. 1, ¶ 6, hereinafter "Biggin Aff."). Plaintiff's former attorney, James Nicholas, submitted an affidavit asserting the same, i.e., that neither Plaintiff nor Lexington Insurance Company intended to release Defendant. (Doc. No. 29, Ex. 2, ¶ 6, hereinafter "Nicholas Aff.").

On Motion for Summary Judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters related therein." FED. R. CIV. P. 56(e). During the negotiations leading to formation of the Release, neither Plaintiff nor his former attorney had spoken with Lexington Insurance Company's representative concerning the release of Defendant. (Biggin Aff., ¶ 8; Nicholas Aff. ¶¶ 8, 9). After carefully reviewing each of Plaintiff's affidavits in view of Federal Rules of Evidence 701 and 602, and especially in light of the admission that neither Plaintiff nor his former attorney broached the subject during the release negotiations, it is clear that neither individual can competently testify as to the intent of Lexington Insurance Company or its agents during the formation of the Release.

The Court also finds that the absence of an affidavit from Lexington's Insurance Company's attorney concerning the negotiations is of no moment. Simply put, a party cannot rely on the omission of testimony to raise an inference in its favor. *Avirgan v. Hull*, 932 F.2d 1572, 1579 (11th Cir. 1991). Upon consideration of the record as a whole, the Court finds that, if a mistake was made during the formation of the Release, such mistake was unilateral.

In view of the above, the Court finds that the terms of the Release are clear and unambiguous.

### *Declaratory Judgment and Breach of Contract*

In Count I, the Complaint seeks a determination as to Plaintiff's right to recover funds from Defendant under an insurance contract, and in Count II it asserts that Defendant breached this contract. (Doc. No. 2, ¶¶ 28-40). In either case, Plaintiff is entitled to recovery only because he is the assignee of whatever rights Jonas Nance possesses under the insurance contract. (*Id.*, ¶ 17, 30, 37 and Ex. J). The focus of the analysis, therefore, should be on Jonas' claims, if any, against Defendant.

Even if Jonas was an "insured" under the contract[3] and his claims were not otherwise barred by its terms, the subject insurance contract clearly and unambiguously applies only where Jonas would be liable for an amount exceeding $500,000. (*See* Doc. No. 2, Ex. A, hereinafter "Ins. Contract", at "Renewal Declarations" and Part III.A.1; Lawlor Aff., ¶ 5). The insurance contract provides:

> A.   1.   We will pay an amount for which anyone covered by this policy becomes legally liable for Injury due to an Occurrence which takes place during the Policy Period and in the Policy Territory. This insurance applies:
>
>      a.   As excess insurance over and above the greater of:

---

[3] In the circumstances of this case, the contract provides insurance coverage for the policyholders and their "Relatives." (*See* Doc. No. 2, Ex. A, at Part II.A.1). It defines a "Relative" as "a person related to [the policyholders] by blood, marriage, or adoption who lives in [the policyholders'] household . . . ." (*Id.* at Part I.K). Based on conflicting record evidence, there is an issue of fact as to whether Jonas was living in his parents' household at the time of the incident. (*Compare* Doc. No. 2, Ex. E *with* Doc. No. 2, Ex. F, pp. 3-5).

(1)     the Minimum Limit of Coverage as stated in the Declarations
        which is required to be provided by the Basic Policies; or
(2)     the actual Limit of Coverage provided by the Basic Policies
        if such actual limit is greater than the Minimum Limit of
        Coverage as stated in the Declarations.

(Ins. Contract, at Part III.A). The undisputed record evidence demonstrates that the relevant Basic

Policy provided by Lexington Insurance Company provided a Limit of Coverage of $500,000, which

is greater than or the equivalent to the Minimum Limits of Coverage required by the insurance

contract. (Ins. Contract, at "Renewal Declarations"; Lawlor Aff., ¶ 5). The question relevant to

Count I and Count II of the Complaint then is whether Jonas is legally liable for an amount greater

than $500,000.

        Initially, Jonas' liability to Plaintiff was controlled by the final judgment of the state court

in the amount of $1,000,000. Approximately a year later, however, Jonas' legal liability was

extinguished when Plaintiff executed the "Release of All Claims." By its own terms, the Release

discharged all of Jonas' legal liability to Plaintiff for his injuries arising from the November 27, 2000

incident in exchange for a payment in the amount of $140,000. (Release, pp. 1-2). This payment was

within the limits of liability coverage provided by the Nances' primary insurer, Lexington Insurance

Company. (*See* Lawlor Aff., ¶ 5). Consequently, as of the date of the filing of this action,

Defendant's insured did not possess a legal liability in excess of the liability coverage provided by

the primary insurer, and as a result Defendant was not obligated to make a payment in any amount

under a plain reading of the subject insurance contract. (Ins. Contract, at Part III.A).

        None of the statutes cited by Plaintiff operate to change this result, and Plaintiff's contention

that Florida law bars the discharge of his claims against Defendant through the operation of the

"Release of All Claims" is without merit. (*See* Doc. No. 32, pp. 6-9). Each statute relied upon by

Plaintiff applies in situations where there are joint tortfeasors or obligors, and each statute is meant to obviate the common law principle that release of one joint or joint and several tortfeasor or obligor constitutes a release of all. *See* Fla. Stat. §§ 46.015, 768.041, 768.31(5). Here, the only tortfeasor liable for Plaintiff's injuries was Jonas, and Plaintiff relinquished any claim that he had against Jonas when he executed the Release. Defendant's obligations under the insurance contract turn upon the legal liability of its insured, and acting on the advice of counsel, Plaintiff voluntarily discharged that liability in a document that specifically contemplated relinquishing all claims arising from the November 27, 2000 incident against Jonas and his insurers.

Likewise, the cases relied on by Plaintiff are not applicable to the facts of the instant case. The Court in *Allstate Ins. Co. v. Am. S. Home Ins. Co.*, 680 So. 2d 1114 (Fla. Dist. Ct. App. 1996), addresses the fiduciary relationship between an excess insurer and a primary insurer, an issue that is not germane to the questions in this case. *See also Gen. Accident Fire & Life Assurance Corp., Ltd. v. Am. Cas. Co. of Reading, Pa.*, 390 So. 2d 761 (Fla. Dist. Ct. App. 1980). Likewise, the decision of *Miller v. Safety Mut. Cas. Corp.*, 497 So. 2d 1273, 1274 (Fla. Dist. Ct. App. 1986), turned on the specific terms of the insurance contract defining when the excess carrier would be liable under the contract. Such terms are not the subject of contention in this case. The decision of *Aetna Cas. & Sur. Co. v. Beane*, 385 So. 23 1087 (Fla. Dist. Ct. App. 1980), is also distinguishable from the instant case. In *Beane*, the Plaintiff brought suit against the excess carrier as a third party beneficiary under the insurance contract, and in contrast, Plaintiff has brought the claims in this case as an assignee of Jonas' first party rights under the contract. *Id.* at 1089. Moreover, the Court in *Beane* merely read the release at issue there *in pari materia* with the parties' contemporaneous settlement documents. *Id.* 1088-89. This is not applicable here where the settlement documents and

the Release were not contemporaneous and were the result of different negotiations between different parties.

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Count I and Count II of the Complaint.

### Bad Faith Claims

In Count III, the Complaint contends that Defendant violated three statutory duties to its insured when it declined to defend Jonas in the state court case. (Doc. No. 2, ¶¶ 41-49). Defendant argues that, because the Release discharged all of its insured's liability for Plaintiff's claim, Jonas' statutory first-party bad faith claims must also fail.

In Florida, if an excess judgment has been satisfied, absent an assignment of that cause of action prior to satisfaction, a third part cannot maintain an action for breach of duty between an insurer and its insured. *Fidelity & Cas. Co. of N.Y. v. Cope*, 462 So. 2d 459, 461 (Fla. 1985). Defendant's argument would be correct but for the assignment of Jonas' claims to Plaintiff which occurred more than a year prior to the signing of the Release. (*See* Doc. No. 2, Ex. J; Release).

Therefore, the Court must deny Defendant's Motion for Summary Judgment as to Count III.

### Plaintiff's Cross Motion for Summary Judgment

Plaintiff's Cross Motion for Summary Judgment rests on the proposition that the Release in this case did not operate to bar his claims against Defendant. (Doc. No. 32, p. 13). In view of the disposition of Defendant's Motion for Summary Judgment, Plaintiff's cross motion is denied as moot as to Count I and Count II of the Complaint.

-14-

Even if Plaintiff's claims were justiciable, he fails to present argument or Rule 56 evidence in support of his required *prima facie* case. *See Steil v. Fla. Physicians' Ins. Reciprocal*, 448 So. 2d 589, 592 (Fla. Dist. Ct. App. 1984). In *Steil*, the Florida Third District Court of Appeal held that, when presenting a claim pursuant to a *Coblenz* agreement, the plaintiff "assume[s] the burden of initially going forward with the production of evidence sufficient to make a *prima facie* showing of reasonableness and lack of bad faith, even though the ultimate burden of proof will rest upon the carrier." *Id.* Plaintiff has not shown reasonableness and the lack of bad faith for the claims presented here. *See also U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 2006 WL 862845, *4 (Fla. Dist. Ct. App. 2006).

Moreover, there are material issues of fact regarding Plaintiff's bad faith claims. In it not clear from the record whether Defendant had a duty to defend under the contract. The subject insurance policy requires Defendant to tender a defense only where its insured is not covered by primary insurance. (*See* Ins. Contract, at Part II.B.1). Although Plaintiff presents an argument that the primary insurer in this case denied coverage, he offers no evidentiary support for that argument. (*See* Doc. No. 32, p. 16). Likewise, there is an issue of fact as to whether Jonas was living in his parent's household at the time of the incident. (*Compare* Doc. No. 2, Ex. E *with* Doc. No. 2, Ex. F, pp. 3-5). Accordingly, Plaintiff has failed to meet his burden for summary judgment on Count III of the Complaint.

## Conclusion

Based on the forgoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment (Doc. No. 3) and **DENIES** Plaintiff's Cross Motion for Summary Judgment (Doc. No. 28).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on May _5___, 2006.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record